IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

PAMELA P.,

       Plaintiff,

vs.                                      CIVIL ACTION NO. 3:25-CV-00699

FRANK BISIGNANO,
*Commissioner Of Social Security*,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered November 25, 2025 (ECF No. 2), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in Support of Complaint and the Defendant's (hereinafter "Commissioner") Brief in Support of Defendant's Decision. (ECF Nos. 5, 8)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** the Plaintiff's request for remand (ECF No. 5); **DENY** the Commissioner's request to affirm the final decision (ECF No. 8); **REVERSE** the final decision; and **REMAND** this matter back to the Commissioner

1

pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed her application for DIB on June 6, 2022 alleging disability since June 1, 2022 due to degenerative disc disease, high blood pressure, bladder incontinence, building discs, "fall risk", "low mobility", depression, asthma, and water retention (Tr. at 228). Her claim was denied at both the initial and reconsideration levels of review (Tr. at 76, 88). Thereafter, she filed a written request for hearing on April 19, 2024 (Tr. at 119-120).

An administrative hearing was held on February 13, 2025 before the Honorable Jerry Meade, Administrative Law Judge ("ALJ") (Tr. at 50-65). On March 13, 2025, the ALJ entered an unfavorable decision (Tr. at 16-49). Thereafter, the Plaintiff sought review by the Appeals Council (Tr. at 198-199). The ALJ's decision became the final decision of the Commissioner on September 26, 2025 when the Appeals Council denied the Plaintiff's Request for Review (Tr. at 1-6).

On November 25, 2025, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 4) Subsequently, the Plaintiff filed a Brief in Support of Complaint (ECF No. 5), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 8), and finally, the Plaintiff filed her Reply Brief (ECF No. 9). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 57 years old as of the alleged onset date, and therefore considered a

"person of advanced age" See 20 C.F.R. § 404.1563(c). (Tr. at 38) She has a high school education, and last worked as a registered nurse. (Id.)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant filing for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental

capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c). This Section provides as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information;

interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through December 31, 2027. (Tr. at 21, Finding No. 1) At the first inquiry, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since June 1, 2022, the alleged onset date. (Id., Finding No. 2) At the second inquiry, the ALJ determined the Plaintiff has the following severe impairments: obesity; degenerative disc disease of the cervical spine, thoracic spine and lumbar spine; osteoarthritis of the hands and SI joints; scoliosis; sleep apnea; asthma; left cubital tunnel syndrome; right carpal tunnel syndrome; depressive disorder; and anxiety disorder. (Tr. at 22, Finding No. 3) At the third inquiry, the ALJ concluded that the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 25, Finding No. 4)

The ALJ then found that the Plaintiff has the residual functional capacity ("RFC") to perform medium work except:

> she can occasionally climb and crawl. She can frequently balance, stoop, kneel, and crouch. She can frequently handle and finger with both hands. She must avoid concentrated exposure to extreme cold, wetness, humidity, vibrations, and irritants, such as fumes, dust, odors, gases, and poorly ventilated areas. She must avoid even moderate exposure to hazards, such as moving machinery and unprotected heights. The claimant can understand, remember, and carry out repetitive, one to three-step tasks.

(Tr. at 28, Finding No. 5)

At step four, the ALJ found the Plaintiff is incapable of performing her past relevant work. (Tr. at 38, Finding No. 6) However, at step five, in addition to the immateriality of the transferability of job skills, the ALJ found that based on the Plaintiff's age, education, past relevant

6

work and RFC, the Plaintiff is capable of performing other jobs in the national economy. (Id., Finding Nos. 7-10) Finally, the ALJ determined the Plaintiff had not been under a disability from June 1, 2022 through the date of the decision. (Tr. at 39, Finding No. 11)

### Plaintiff's Challenges to the Commissioner's Decision

The Plaintiff argues that the ALJ made an error at step two, where he determined the Plaintiff's neurogenic bladder was not a severe impairment, by failing to consider the impact of this impairment for all possible twelve month period. (ECF No. 5 at 2-4) Specifically, the ALJ did not account for the Plaintiff's limitations stemming from this impairment such as proximity to a restroom or additional breaks throughout the day to self-catheterize, and should have been presented to the vocational expert, which may have resulted in a finding that the Plaintiff could not have performed the representative occupations at the fifth step of the sequential evaluation process. (Id. at 5) The Plaintiff asks that the final decision be reversed and that she be awarded benefits, or alternatively, remand this matter for further proceedings. (Id. at 6)

In response, the Commissioner asserts that the ALJ's step two determination is supported by substantial evidence, and that the Plaintiff's non-severe neurogenic bladder condition was considered when assessing the Plaintiff's RFC; additionally, because the ALJ found the Plaintiff had other severe impairments at step two and evaluated the Plaintiff's claim throughout the remaining steps of the sequential evaluation process, including the Plaintiff's non-severe impairments, there is no error. (ECF No. 8 at 4-9) Because the final decision is supported by substantial evidence, the Commissioner asks the Court to affirm. (Id. at 9)

In reply, the Plaintiff points out that the Commissioner does not address the fact that the ALJ did not adequately consider the Plaintiff's limitations resulting from her neurogenic bladder

7

during the twelve-month period, specifically from June 1, 2022 and prior to her surgeries in September 2023 and October 2023 – the ALJ's error is not harmless here because had the Plaintiff's limitations from this period been addressed in the hypothetical question to the vocational expert, the vocational expert may have found the Plaintiff unable to perform the identified occupations prior to her bladder surgeries. (ECF No. 9 at 1-2)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record pertaining to the Plaintiff's arguments and discusses it below.

Summary of Relevant Medical Evidence:

As noted by the parties, the ALJ found the Plaintiff's neurogenic bladder was a non-severe impairment (Tr. at 22-24). The medical records showed that the Plaintiff had complained of problems with incontinence and urinary retention throughout the relevant period: in February 2022, the ALJ noted that the Plaintiff was diagnosed with acute retention of urine (Tr. at 22, 458). On July 13, 2022, the Plaintiff was diagnosed with urinary system disorder with mixed incontinence (Tr. at 22, 583-587). It was further noted that the Plaintiff could self-catheterize, and twice daily in August 2022 (Tr. at 22, 588-589, 617). On August 18, 2022, the Plaintiff was treated for acute UTI, hypokalemia, and hyponatremia (Tr. at 22, 646-647). On October 6, 2022, the Plaintiff was evaluated for urinary retention, among other issues (Tr. at 22, 752-754).

On December 13, 2022, the Plaintiff was diagnosed with atonic neurogenic bladder,

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

recurrent UTI, and urinary retention due to benign prostatic hyperplasia during a urology clinic visit (Tr. at 23, 800). The Plaintiff reported self-catheterizing twice daily, down from three to four times daily; she also reported that medication had improved her mental fog and bladder spasm episodes, but that she continued to have bladder spasms and wanted to increase her dosage – her dosage was increased accordingly (Tr. at 23, 801). By August 2, 2023, the Plaintiff reported self-catheterizing five to six times daily for urinary frequency (Tr. at 23, 1338). At the time, the Plaintiff requested to proceed with InterStim, for which she underwent placement on September 18, 2023 (Tr. at 23, 1359). During a follow up appointment on September 26, 2023, the Plaintiff reported doing well and feeling that she was emptying her bladder better (Tr. at 23, 1363). On October 2, 2023, the Plaintiff underwent placement of a Stage II InterStim (Tr. at 23, 1366-1370), and afterwards, on October 16, 2023, she reported being very happy with the device, that she was able to go out and walk, and she continued to report being happy with the treatment during additional follow up visits, and to leaving the house without issues (Tr. at 23, 1392,1401-1403, 1471, 1523). However, by July 3, 2024, the Plaintiff reported increased nausea and decreased urine output with elevated blood pressure (Tr. at 23, 1526). A renal ultrasound taken on July 12, 2024 was unremarkable (Tr. at 23, 1587).

From the foregoing evidence, the ALJ determined the Plaintiff's neurogenic bladder, among other impairments, were non-severe (Tr. at 24). Specifically, the ALJ noted that the medical evidence showed that the Plaintiff had to self-catheterize twice and up to six times daily, but after the placement of an InterStim device, she reported significant improvement

(Tr. at 24, 588-589, 617, 800, 1338, 1359-1363, 1366-1370, 1392, 1523). The ALJ noted further that the Plaintiff reported being happy with the results of the InterStim placement, and being able to walk and to leave her house without issues, notwithstanding the singular report on July 3, 2024 of experiencing decreased urine output; additionally, the ALJ observed that there were no other notable follow up or complaints, thus finding the InterStim improved the Plaintiff's neurogenic bladder issues (Tr. at 24).

Prior Administrative Medical Findings:

The ALJ also considered the prior administrative medical findings of the State agency medical consultants, Narendra Parikshak, M.D, and Palle Reddy, M.D., who both found that the Plaintiff was capable of performing a reduced range of medium work with various postural and environmental limitations (Tr. at 36-37, 70, 73-74, 81, 84-85). Notably, Drs. Parikshak and Reddy's findings, which the ALJ found to be persuasive, show that each considered urinary retention and neurogenic bladder in their analyses, but neither categorized them as severe impairments, nor did they assess related limitations (Tr. at 36, 70-71, 73-74, 81-82, 84-85).

**Administrative Hearing**

The Plaintiff's Testimony:

With regard to her neurogenic bladder, the Plaintiff testified that it causes her a lot of pain, and while she has an implant, it "isn't 100%" and if her bladder gets really full, it causes pain (Tr. at 57-58).

Vocational Expert's Testimony:

The vocational expert testified that the Plaintiff's past relevant work as a registered nurse

is classified as medium, skilled work, as the Plaintiff performed it (Tr. at 62). Under the controlling RFC, *supra*, the vocational expert opined that a hypothetical individual with the Plaintiff's profile would be unable to perform the Plaintiff's past relevant work, but remained capable of performing other jobs, including a retail stubber, rod assembler, and furniture finisher, all medium, unskilled work (Id.). In response to questioning by the Plaintiff's attorney, the vocational expert opined that if the hypothetical individual were off task more than 15% of the workday, then all competitive employment would be precluded (Tr. at 63).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claims is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists,

the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As noted *supra*, the Plaintiff challenges the ALJ's finding that her neurogenic bladder was not a severe impairment at step two of the sequential evaluation process. At step two, the ALJ considers whether a claimant has a severe medically determinable impairment that meets the 12-month durational requirement of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is considered "severe" if it significantly limits the claimant's ability to perform basic work activities. Id. §§ 404.1520(a)(4)(ii), 404.1522(a). Basic physical work abilities include functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. Id. § 404.1522(b)(1). Basic mental work abilities include functions such as understanding, carrying out, and remembering simple instructions; using judgment; interacting with others; and dealing with changes. Id. § 404.1522(b)(3)-(6). However, an impairment may be considered " 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984). Also noted *supra*, the claimant, not the Commissioner, bears the step two burden of proof. Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987).

While it is undisputed that the ALJ found the Plaintiff had other severe impairments at step two, and proceeded to discuss them at the subsequent stages in the sequential evaluation process (Tr. at 22-40), the record is clear that the Plaintiff's neurogenic bladder presented significant problems for her prior to the InterStim placement. The undersigned notes that when an adjudicator

12

finds at least one severe impairment and continues to evaluate the claim under the five-step process, there is no error. See, e.g., *Spurlock v. Berryhill*, No. 3:17-cv-02240, 2018 WL 1956119, at *14 (S.D.W. Va. Apr. 2, 2018) ("Courts in this circuit have held that failing to list a severe impairment at the second step of the process generally is not reversible error as long as the process continues and any functional effects of the impairment are appropriately considered during the later steps."); *Cook v. Colvin*, No. 2:15-cv-07181, 2016 WL 5661348, at *9 (S.D.W. Va. September 29, 2016) (quoting *Brown v. Colvin*, No. 1:12CV1081, 2015 WL 1143139, at *6 (M.D.N.C. Mar. 13, 2015)) ("A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the factfinder will progress to step three.") (citation modified); see also Ramon M. v Berryhill, 2019 WL 2436938, at *6-7 (D. Md. Jun. 10, 2019) (an ALJ's failure to characterize a claimant's condition as severe at step two of the sequential evaluation process does not always warrant remand, even when erroneous, so long as the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant) (internal citations omitted).

In this case, the undersigned notes that the issue presented here is whether the ALJ erred by finding the Plaintiff's neurogenic bladder condition a non-severe impairment in the first place: the undisputed evidence is that the Plaintiff's complaints of urinary incontinence, urinary retention and self-catheterizing multiple times per day were significantly improved only AFTER her surgeries. At step two, the ALJ determined the Plaintiff's neurogenic bladder impairment was not severe – specifically noting that she was diagnosed with a urinary system disorder with mixed incontinence on July 13, 2022, and that she was self-catheterizing two timed daily in August 2022 (Tr. at 22). The ALJ further noted that the record showed that the Plaintiff had to increase her self-

13

catheterizing, up to five to six times a day, in August 2023, but only after the placement of InterStim in September 2023 did the Plaintiff report improved symptoms, to the point where she could "go out and walk" and "leave the house without issues" (Tr. at 23). In short, these medical records appear to demonstrate the Plaintiff's neurogenic bladder was a medically determinable impairment that met the twelve month durational threshold, and was "severe" to the point that it impacted her physical work abilities, including "walking" under Sections 404.1509, 404.1520(a)(4)(ii) and 404.1522(b)(1). Additionally, given the undisputed evidence that the Plaintiff was self-catheterizing numerous times daily prior to her InterStim placement for at least twelve months during the relevant period impacts her ability to remain on task – and presents a question as to whether the Plaintiff would be off-task in excess of typical employer allowances. This obviously implicates the vocational expert's testimony that being off-task for 15% or more during a workday precludes all employment, thus showing that the error at step two is not harmless in this case.

Thus, under the circumstances presented here, the undersigned is unable to find that substantial evidence supports the ALJ's findings as to this impairment under step two, let alone supports the resulting RFC given this evidentiary gap – in other words, the lack of adequate explanation here precludes meaningful review, and the Court is "left to guess about how the ALJ arrived at his conclusions." Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). Accordingly, for the reasons set forth above, the undersigned also **FINDS** the ALJ's finding at step two regarding the Plaintiff's neurogenic bladder impairment is not supported by substantial evidence, resulting in a flawed RFC assessment and flawed hypothetical question posed to the vocational expert.

The undersigned considered the Plaintiff's alternative argument that the Court should

award benefits for the period under review, however, when an ALJ fails to provide a logical explanation connecting the RFC analysis to the record evidence, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. Carr v. Kijakazi, 2022 WL 301540, at *4 (4th Cir. Feb. 1, 2022). A court can only direct the award of benefits if it is clear that the ALJ's decision denying benefits, properly explained, could not be supported by substantial evidence in the record. Id. at *4-5. Those circumstances are not present in this case. See SSR 96-8p, 1996 WL 3741784, at *7 (the reconciliation of conflicting evidence, and the weighing of evidence, is beyond this Court's jurisdiction to remand with an award for benefits); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's request for remand (ECF No. 5), **DENY** the Commissioner's request to affirm the decision below (ECF No. 8), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Proposed Findings and Recommendation.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings

15

and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: March 26, 2026.



Omar J. Aboulhosn
United States Magistrate Judge

16